** NOT FOR PUBLICATION **

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAKUQUIAN KUSH, | |
| Plaintiff, | Civil Action No. 12-2120 (FLW) |
| v. | OPINION |
| UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 152, CLC AND CASE PORK ROLL COMPANY, INC. | |
| Defendants. | |

**WOLFSON, United States District Judge**:

Plaintiff Dakuquian Kush ("Plaintiff"), a member of United Food & Commercial Workers Union Local 152, CLC (the "Union"), is a former employee of Defendant Case Pork Roll Company, Inc. ("Case" or "Defendant"), who claims that he was wrongfully terminated. Plaintiff grieved to the Union that he was wrongfully terminated by Case, but the Union made a determination that Plaintiff's grievance against Case would not proceed to arbitration. In his two-count Complaint, Plaintiff alleges first, that the Union failed to fairly represent him in his grievance, and second, that Case breached their Collective Bargaining Agreement in violation of § 301 of the Labor Management Relations Act, by wrongfully terminating Plaintiff. In the instant matter, Case moves to dismiss Plaintiff's claims on the basis that Plaintiff failed to exhaust available intra-union remedies prior to instituting this action. Both the Union and Plaintiff oppose Defendant's motion.

For the reasons that follow, the Court finds that Plaintiff has not exhausted intra-union grievance procedures with respect to his fair representation claim against the Union, and as a result, it appears that his claims against both Case and the Union would be dismissed based on that failure alone; nevertheless, based upon the Union's resistance to exhaustion, within thirty days from the date of the Order accompanying this Opinion, the Union or Plaintiff may present to the Court any additional bases that they believe would relieve Plaintiff's duty to exhaust his administrative remedies. Accordingly, Defendant's motion to dismiss is **DENIED** at this time.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY.**

Case and the Union were parties to a Collective Bargaining Agreement ("CBA"), which covered Case's employees, including Plaintiff, at its Trenton, New Jersey facility. (Compl., ¶ 5.) On October 11, 2011, Plaintiff was terminated from his employment with Case. (*See* Compl., ¶ 7.) Subsequently, Plaintiff requested the Union to file a grievance based on an alleged wrongful termination by Case in violation of the CBA. (Compl., ¶ 8.) Joseph Williams ("Williams"), Plaintiff's union representative, filed an initial grievance. (*Id.*) In that grievance, Williams asserted that there was insufficient evidence to support Case's allegations of theft by Plaintiff. (Compl., ¶ 9.) The representative requested that management should reconsider Plaintiff's termination. (*Id.*) Subsequently, however, Case notified Williams that it would not reverse its position. (*Id.*)

Thereafter, Plaintiff requested the Union to arbitrate the denial of the grievance under the terms of the CBA. (Compl., ¶ 10.) On November 17, 2011, Plaintiff appeared at the Union's Hammonton, New Jersey office before the "Union Grievance Review Committee (the "Committee")." (*Id.*) On November 29, 2011, the Committee informed

Plaintiff that it voted that no further action shall be taken on behalf of Plaintiff's grievance. (*See Id.*) Plaintiff was also informed that the Union's decision to take no further action could be appealed to the Executive Board of the Local Union. (*Id.*)

On December 6, 2011, Plaintiff appealed the Committee's decision to the Union's Local Executive Board. (*See* Compl., ¶ 11.) On January 13, 2012, the Executive Board informed Plaintiff that it would not proceed to arbitration with Plaintiff's grievance and that the Executive Board considered the matter closed. (*Id.*) According to Plaintiff, the Committee advised him that he had no further right of appeal and that the matter was closed." (*Id.*)

Without any further action by the Union, on April 9, 2012, Plaintiff filed a two-count Complaint against Case and the Union, alleging in the first count that the Union breached the duty of fair representation, and in the second count that Case wrongfully terminated his employment without just cause, in breach of the CBA. (Compl., ¶¶ 12, 16.)

As to the claim against the Union, Plaintiff asserts that the decision by the Executive Board was improper because "[t]he Union was aware that the owner of Case, Thomas E. Grieb, held a personal animus towards Plaintiff, and that he had previously wrongfully accused Plaintiff of a crime against Case." (Compl., ¶ 12.) Plaintiff further asserts that the Union had assisted Plaintiff in a previous grievance against Case and because of such grievance, he was reinstated to his job by Case. (*Id.*) Plaintiff further alleges that despite this knowledge, "the Union chose to ignore the dearth of evidence on the [theft] charge against Plaintiff and chose to inadequately investigate the charges Case made against Plaintiff." (*Id.*) As a result, Plaintiff argues that "Defendant Union violated

3

its duty to fairly represent [him] by refusing to pursue arbitration of his discharge grievance," and such inaction was "arbitrary, discriminatory, and capricious and constituted bad faith." (*Id.*) As to the count against Case, Plaintiff asserts that "there were no facts to support the allegation of theft against [him]" and that he "did not commit any these or other actions which would justify the termination of his employment." (Compl., ¶¶ 12, 15.)

Without delving into the merits of Plaintiff's claims, Case argues, *inter alia*, that Plaintiff failed to exhaust administrative remedies specifically set forth by the Union's Local and International Constitutions with respect to his fair representation claims against the Union. Case contends that because of such a failure, Plaintiff's claims against Case and the Union should both be dismissed.

## II. STANDARD OF REVIEW

In this matter, Case's motion to dismiss pursuant to Rule 12(b)(1) presents a factual attack on this Court's subject matter jurisdiction. Indeed, when jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991). In considering a motion pursuant to Rule 12(b)(1), the district court must distinguish between factual and facial challenges to subject matter jurisdiction. Where a defendant contends that the plaintiff's complaint did not properly plead jurisdiction -- which is the case here -- the court need not consider extrinsic documents, and must "consider the allegations of the complaint and documents referenced therein and attached in the light most favorable to the plaintiff." *Gould Electronics, Inc. v. U.S.,* 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Federal*

*Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Thus, "[w]here an attack on jurisdiction implicates the merits of plaintiff's federal cause of action, the district court's role in judging the facts may be more limited." *Martinez v. U.S. Post Office*, 875 F.Supp. 1067, 109 (D.N.J. 1995) (citing *Mortensen*, 549 F.2d at 891).

**III. DISCUSSION**

As an initial matter, in Counts I and II of his Complaint, Plaintiff asserts a "hybrid" § 301/fair representation action against the Union, his collective bargaining representative, and his employer, Case. *See G.P. Reed v. United Transportation Union,* 488 U.S. 319, 328 (1989); *Heffron v. Adamar of New Jersey, Inc.*, 270 F. Supp. 2d 562, 569 (D.N.J. 2003). Indeed, this "hybrid" § 301/fair representation action is comprised of two separate, but interdependent, causes of action that may be brought together. *See Felice v. Sever*, 985 F.2d 1211, 1226 (3d Cir. 1993) (*citing DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 164-65 (1983) ("A plaintiff who has a viable "hybrid" claim against both the employer and the union may opt to bring only the section 301 claim against the employer or the breach of duty of fair representation claim against the union . . . . Either claim standing alone can be brought in federal court because each has an independent jurisdictional basis"). Ordinarily, in such a hybrid suit, an employee files a claim against the union alleging breach of the duty of fair representation by discriminatorily or arbitrarily failing or refusing to pursue his ensuing contractual grievance against the employer, together with a claim against the employer alleging breach of the collective bargaining agreement in violation of § 301 of the Labor Management Relations Act. *Id.*; *Reed*, 488 U.S. at 328; *see Vaca v. Sipes,* 386 U.S. 171, 177 (1967).

In a "hybrid" § 301/fair representation action, the two claims are considered "inextricably interdependent," that is, "[t]o prevail against either the company or the Union . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." *DelCostello*, 462 U.S. at 164-65; *see Adcox v. Teledyne, Inc.,* 21 F.3d 1381, 1386 (6th Cir. 1994) ("In a hybrid suit under § 301, to recover against either the employer or the union, a plaintiff must show that the employer breached the collective bargaining agreement *and* that the union breached its duty of fair representation") (citing *White v. Anchor Motor Freight, Inc.,* 899 F.2d 555, 559 (6th Cir.1990)). Thus, "[u]nless [employee-plaintiff] demonstrates both violations, he cannot succeed against either [Defendant]." *White,* 899 F.2d at 560. Here, there could be no serious dispute that Plaintiff has brought a hybrid action. As such, if the Court finds that Plaintiff has failed to exhaust any of his claims, either against Case or the Union, Plaintiff's Complaint could be dismissed.

The Court now turns to the question of whether Plaintiff has exhausted his administrative remedies, pursuant to the Local Union Bylaws and the International Constitution, as to the fair representation claim against the Union.

**A.     Fair Representation**

Plaintiff's alleges that the Union breached its duty of fair representation by "refusing to pursue arbitration of his discharge grievance" by "ignor[ing] the dearth of evidence on the charge against Plaintiff" and "inadequately investigat[ing] the charges Case made against Plaintiff." (Compl. ¶ 12.) Furthermore, Plaintiff accuses the Union's

6

Executive Board of being aware of a "personal animus" that Case's owner had against Plaintiff, and yet had refused to investigate. (*Id.*)

Case responds that Plaintiff has not exhausted his intra-union remedies with respect to his fair representation claim by failing to proceed consistent with Articles 25 and 26 of the International Constitution.[1] Case explains that Plaintiff's claims "constitute allegations that officers or representatives of the Union failed to "faithfully perform the duties of his or her office or position" that may be brought against such members pursuant to the aforementioned Articles, and those Articles, according to Case, explicitly instruct Plaintiff to bring those complaints to the Union in the first instance.

While Plaintiff responds rather simply that he has exhausted those remedies, the Union further insists that the provisions of both the Local and International Constitutions do not provide any administrative proceedings for Plaintiff's claims against the Union, and thus, he has exhausted his intra-union remedies as to his fair representation claim as well.[2] This Court finds, however, that the structure and interplay of the Local Union Bylaws and International Constitution do indeed set forth further intra-union remedies as to Plaintiff's fair representation claim against the Union that Plaintiff has failed to pursue. Therefore, exhaustion is required for that claim before bringing the instant action.

---

[1] In this matter, Case concedes that Plaintiff exhausted his administrative remedies with regard to Plaintiff's claims against Case, i.e., wrongful termination, prior to bringing this action. What remains is the question of whether Plaintiff exhausted his intra-union remedies as to his fair representation claim.

[2] Both Plaintiff and the Union spend much of their opposition arguing that Plaintiff has exhausted all of his available internal remedies for review of the Union's decision not to arbitrate his grievance. In that respect, the Court will focus on the Union's arguments, as the contentions of both the Union and Plaintiff overlap.

7

As the exclusive bargaining representative for all employees in a collective bargaining unit, unions have a duty of fair representation in negotiating and enforcing collective bargaining agreements. *Vaca,* 386 U.S. at 177. The union's duty of fair representation is implied from the scheme of the National Labor Relations Act ("NLRA") because of its policy allowing a single labor organization to act as the exclusive representative of all employees in a bargaining unit. *Bygott v. Leaseway Transp. Corp.*, 1987 WL 54392 (3d Cir. Jun. 25, 1987) (*citing Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192 (1944)); *Humphrey v. Moore,* 375 U.S. 335 (1964). Such a duty imposes that the Union "serve the interest of all members without hostility or discrimination towards any, to exercise discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca,* 386 U.S. at 177.

A breach of the duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith. *Id*. at 190. In the first instance, it is well established that "[a]n employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the Labor Management Relations Act . . . ." *Wheeler v. Graco Trucking Corp.*, 985 F.2d 108, 112 (3d Cir. 1993) (*citing Clayton v. UAW*, 451 U.S. 679, 681 (1981)); *see Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 563 (1976); *Vaca,* 386 U.S. at 184; *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652-53 (1965). Indeed, generally, a worker must resolve disputes with his union through internal proceedings, and settle arguments with his employer through the private resolution

afforded by union agency. *Balsavage v. Ryder Truck Rental, Inc.,* 712 F. Supp. 461, 467 (D.N.J. 1989) (*citing Republic Steel*, 379 U.S. at 652-53); *see Pawlak v. Int'l Bhd. of Teamsters,* 444 F.Supp. 807, 810 (M.D. Pa. 1977), *aff'd without opinion,* 571 F.2d 572 (3d Cir. 1978) (citations omitted) ("Whenever a union member has been mistreated by his bargaining representative, he must . . . avail himself of his intra-union remedies before turning to the courts for relief.") If a union member fails to exhaust his intra-union remedies, he carries the burden of explaining his failure. *Brady v. Trans World Airlines, Inc.,* 401 F.2d 87, 104 (3d Cir. 1968), *cert. denied,* 393 U.S. 1048 (1969).

The Supreme Court, however, noted in *Clayton* that in exercising sound discretion as to whether to excuse exhaustion of internal union procedures, courts should consider *at least* three factors:

> 1) whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; 2) whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and 3) whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

451 U.S. at 689. The Third Circuit has expounded upon these principles further: "whether exhaustion [is] required must depend upon the reasonableness of imposing it under the circumstances." *Local Union No. 1075, United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO v. United Rubber, Cork, Linoleum & Plastic Workers of Am., AFL-CIO*, 716 F.2d 182, 187 (3d Cir. 1983). Importantly, when considering these factors, courts must also consider "whether there was a [Union] constitutional provision which clearly and unambiguously directed resort to an established internal mechanism." *Id*. In that respect, "[w]hen there is an internal union procedure that offers a viable nonjudicial

9

mechanism for resolving disputes . . . sound prudential considerations should be encouraged." *Id.* at 186.

In this matter, Case maintains that the provisions of the International and Local Constitutions bar Plaintiff from bring his fair representation action in court,[3] and that, because Plaintiff's claims against Case and the Union are considered "inextricably interdependent," Plaintiff's failure to exhaust such remedies would bar his claims against Case as well. The Court agrees.

The Union's position is somewhat convoluted. At first, the Union vehemently disagrees with Case's interpretation of the Local Union Bylaws, and suggests that there are no additional union avenues to pursue with respect to Plaintiff's fair representation claims. However, as the Union proceeds to explain its position, it does not appear that the Union points to any provision in the Local Union Bylaws or the International Constitution that would excuse Plaintiff from exhausting intra-union remedies as to his fair representation claims, or otherwise exempt him from doing so. Rather, the Union delves into an in-depth analysis of the interplay of the Local Union Bylaws and the International Constitution to conclude that Plaintiff has no other administrative remedies to pursue as to his claim *against Case*.

In summary, the Union first points to Article XV of the Bylaws:

Section A. The Local Union shall have the exclusive authority to interpret and enforce the collective bargaining contract. In accordance therewith, the Local Union shall have the exclusive authority to submit grievances to arbitration, withdraw grievances, settle and compromise grievances, and decline to invoke the grievance procedures of the collective bargaining contract. The President, or his

---

[3] While Plaintiff did not attach a copy of the Local Union Bylaws or the International Constitution to his Complaint, the Court, nevertheless, can still consider those documents on this motion because they are referenced in, and integral to, the Complaint. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)

> or her designated representative (the Grievance Review Committee), shall make the decision as to whether a grievance is to be submitted to arbitration.
>
> Section B. Any member who disagrees with the disposition of his or her grievance by the Local Union President, or the President's designated representative, shall have the right to appeal the decision to the Local Union Executive Board . . .
>
> Section D. The Local Union Executive Board shall consider the appeal at the next regular meeting of the Executive Board. The Executive Board shall treat the appeal as either a request for a review or a request for reconsideration.
>
> Section E. The Executive Board shall advise the member of its decision within 30 days from the date of its meeting. There shall be no further appeal from the decision of the Executive Board.

Pursuant to these provisions, the Union argues – correctly -- that "Plaintiff exhausted all remedies for redress available under the parties CBA" because "[t]here is no internal union right of appeal or remedy of [the Union's] decision [not to arbitrate]." In fact, Case acknowledges that, according to the Bylaws, there is no additional review of the Union's decision not to arbitrate. And, indeed, the International Constitution does not provide an appellate process to review a decision by a local union not to arbitrate a case. *See, e.g.*, International Union, Article 10(E)2 ("the International President shall not have the authority to direct any change in a chartered body's disposition of a member's grievance arising out of a collective bargaining agreement between the chartered body and an employer."). The Union then goes onto to explain why, structurally, the International President cannot meddle with the decisions of local unions by referring to different provisions of the Bylaws and the International Constitution. In that respect, exhaustively, the Union attempts to distinguish legal authorities utilized by Case. Without addressing those points, however, the Court appreciates the Union's stance that Plaintiff has exhausted all administrative remedies as to his claims ***against Case***, particularly since Case has conceded that fact. However, the Union does not address

whether the Bylaws and/or the International Constitution include any administrative proceedings that Plaintiff would have to first pursue before bringing his *fair representation claims against the Union* to this Court.

As the Court has discussed above, Case's point on that question is well taken. Plaintiff clearly has asserted a cause of action against the Union for breach of its duty of fair representation. *See* Compl, ¶ 5. The question of exhaustion in that circumstance starts with Article XIII of the Union Bylaws, which sets forth the duties and obligations imposed upon all members of the Union. Section D(2) of that Article provides that "[n]o members shall institute an action outside of the Union against the International Union, Local Union or any of their officers or representatives without first exhausting all remedies provided by the Local Union Bylaws and rules and the Constitution and the laws of the International Union." Local Union Bylaws, Article XIII D(2). Moreover, the Bylaws expressly incorporate, by reference, the International Constitution.

Article 25 of the International Constitution addresses the type of claims (fair representation) raised by Plaintiff. Article 24(B)(5) establishes that it is a violation of a member's duties to faithfully perform the duties of his or her office or position. In cases of disciplinary action brought against a member or members for breach of his or her duties of obligations, that member(s) "shall be charged and tried in the Local Union through which he or she is a member." International Constitution, Article 26 (A)(1). Plaintiff's allegations against the Union clearly fit within these provisions, and therefore, he must exhaust those claims through his intra-union remedies first. Indeed, it appears that the Union is in agreement with such a proposition. The Union states in its opposition papers that "[i]t is only where there are allegations of . . . members violating another

members union related rights . . . does the right to bring charges recognized in the International Constitution arise." Union's Opp., p. 17.

Finally, having determined that there appears to be an internal union procedure that offers a viable nonjudicial mechanism for resolving Plaintiff's dispute with the Union, the Court next considers the *Clayton* factors. However, in his opposition, Plaintiff has not raised any issues regarding whether union officials would be so hostile that he could obtain a fair hearing on his claim, nor does he claim that the internal union appeals procedures would be inadequate in this matter such that he could not seek full relief under § 301. Without any countervailing considerations, it does not appear those scenarios presented by the factors are present in this case.

The Court's consideration does not end here, however. While neither Plaintiff nor the Union has presented a compelling excuse for Plaintiff's apparent failure to exhaust administrative remedies as to his fair representation claim, the Court recognizes that this suit has an unusual procedural history; that is, it does not appear that the Union is seeking to dismiss Plaintiff's fair representation claim based on his failure to exhaust, when normally, it is a union's prerogative to enforce its administrative procedures as set forth in a CBA. Whatever the consideration or oversight, the Court will permit the Union or Plaintiff to present to the Court any additional bases, *e.g.*, waiver or conflict, under *Clayton* to excuse Plaintiff from exhausting intra-union grievance procedures as to his fair representation claim against the Union. They shall have thirty days from the date of the Order accompanying this Opinion to present any arguments that are not otherwise addressed herein.

In the event the Union or Plaintiff does not make such a showing, the Court would dismiss Plaintiff's Complaint at that time, because the Court finds here that there are provisions in the Local Union Bylaws and International Constitution that "clearly and unambiguously directed resort to an established internal mechanism" by which Plaintiff could seek relief; it is well within this Court's discretion to conclude that further exhaustion is required as to Plaintiff's fair representation claim against the Union in this hybrid action. *Local Union No. 1075*, 716 F.2d at 187; *Clayton*, 451 U.S. at 689 (*citing NLRB v. Marine Workers*, 391 U.S. at 426); *see, e.g.*, *Wiggins v. Heinz N. Am.*, 243 Fed. Appx. 663, 664 (3d Cir. 2007); *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992).[4]

DATED: May 14, 2013

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

---

[4] Having considered the arguments of both Plaintiff and the Union, and reviewed the Local Union bylaws and the International Constitution, the Court finds unpersuasive the Union's alternative argument that additional discovery, fact-finding, or a plenary hearing is necessary in this matter.