UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DAKUQUIAN KUSH,** | Civil Action No. 12-2120 (FLW) |
| **Plaintiff,** | |
| v. | MEMORANDUM OPINION |
| **UNITED FOOD & COMMERCIAL WORKERS UNION LOCAL 152, CLC, et al.,** | |
| **Defendants.** | |

**BONGIOVANNI, Magistrate Judge**

This matter comes before the Court upon Defendant Case Pork Roll Company, Inc.'s ("Case") motion for a protective order pursuant to FED.R.CIV.P. ("Rule") 26(c) and L.Civ.R. 5.3., seeking to preclude Plaintiff Dakuquian Kush ("Kush") from learning the identities of four Case employees who have provided sworn statements to the effect that they witnessed Kush remove cases of pork roll from a room in which they were working. [Docket Entry No. 33]. Defendant United Food & Commercial Workers Union Local 152, CLC ("Local 152") joins Case's motion. [Docket Entry No. 34]. Kush opposes Case's motion. The Court has fully reviewed and considered all arguments made in support of and in opposition to Case's motion. The Court considers same without oral argument pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Case's motion is DENIED.

**I.     Background and Procedural History**

In light of the parties' familiarity with the facts underlying this matter, they shall not be restated at length herein. Instead, the Court shall recount only those facts necessary for the resolution of Case's motion for a protective order. At issue in this motion is whether Kush should be permitted to learn the identities of four potential defense witnesses all of whom

worked at Case with Kush. These individuals have executed sworn witness statement stating that they observed Kush removing cases of pork roll from the room in which they were working.[1] Kush's employment with Case was terminated on October 11, 2011 after he was allegedly seen stealing company property.

Kush's termination from Case forms the basis of his Complaint here. Kush contends that Case's termination of his employment was arbitrary and capricious and contrary to Local 152's Collective Bargaining Agreement ("CBA"). Kush previously sought to obtain access to the witness statements put forth by the four Case employees. However, via Letter Order entered on September 18, 2013, the Court stayed the decision on whether Kush should gain access to the witness statements, and thereby the witnesses' identities, until after a decision on Case's then still pending motion to dismiss was rendered. (*See* Letter Order of 9/18/2013; Docket Entry No. 29). On March 12, 2014, the District Court exercised its discretion to excuse Kush from exhausting any intra-union remedies on his breach of duty of fair representation claims against Local 152 and allowed this suit to proceed here against both Case and Local 152. This Court then entered two Letter Orders, the first set a general schedule to govern this matter (*See* Letter Order of 3/12/2014; Docket Entry No. 30); the second imposed a deadline on Defendants by which any motion for a protective order concerning the aforementioned witness statements had to be filed. (*See* Letter order of 4/30/2014; Docket Entry No. 32). Case timely filed the instant motion.

---

[1]Counsel for Kush already knows the identities of the four individuals. The issue here is whether Kush, himself, should be permitted to learn same.

II.     **The Parties' Arguments**

    A.  **Case and Local 152**

Case and Local 152 both argue that they have presented credible, reliable evidence to demonstrate that the four individuals employed by Case who identified Kush as having perpetrated a theft at the company have good cause to fear for their safety if their identities are disclosed now in the context of pretrial discovery.  In this regard, they rely on Kush's alleged propensity for violence, as demonstrated by Kush's past criminal record and/or the content of a book he wrote, which contains facts from his life, to justify the reasonableness of their fear of retaliation by Kush should their identities be disclosed.

With respect to Kush's criminal record, Case notes that Kush was charged with two violent crimes:  a charge of terroristic threats in 1992 and a charge of aggravated manslaughter in 1993.[2]  Case notes that Kush was convicted of the aggravated manslaughter charge on January 21, 1994 and sentenced to 25 years in State prison with 7 years of parole ineligibility.  Further, with respect to Kush's book, "The Land of the Burnt Face People," Case and Local 152 claim that this book, which chronicles Kush's life experiences in Trenton as well as his desire to torture and kill for the sake of revenge, demonstrates Kush's willingness to use violence to get what he wants.  Case and Local 152 point to passages from the book such as the following to support their position:

- "I don't have no one to call and give the green light to have Maria[3] and her kids killed but now I am a true believer of the saying that everybody needs somebody sometimes." (Hilliard Decl., Ex. B at 35; Bushinsky Cert., Ex. B at 35).

- "When I picked my head up you could see the hate in me that I had for her through the window pane of my soul.  I looked at her with a spirit that was so

---

[2] Case also notes that Kush has been arrested for non-violent crimes as well.
[3] Maria was Kush's girlfriend.

>   settled and said, 'Today is your day Maria, but one day it is going to be my day and when I come for you don't plea to me or scream for mercy. Take your punishment like the woman I see in front of me. It could be thirty years from now. Whenever I am free from jail, I'm coming to look for you and when I find you I'm going to take my time and torture you first and then when I get tired of you I'm going to murder you Maria. When I come for you and you are not home the habitation that is in the house when I get there, I am going to kill everyone until I get to you.'" (Hilliard Decl., Ex. B at 43; Bushinsky Cert., Ex. B at 43).
>
> - "I was known for giving out a good old-fashioned ass whipping, breaking jawbones or knocking people out with either had while they were still standing on their feet, which is called a delayed-knock out." (Hilliard Decl., Ex. B at 55; Bushinsky Cert., Ex. B at 55).
>
> - "When I wasn't fucking people up for recreation, then I would wander the dark streets of North Trenton until I had found a mass of confusion." (Hilliard Decl., Ex. B at 55; Bushinsky Cert., Ex. B at 55).
>
> - "I pulled out my Glock nine-millimeter and unloaded it on the both of them, only shooting them from the waist down. Maria was terrified. There were two reasons I did this. Number one was that the two guys got in the way of my goals of what I was trying to do. And number two I wanted Maria to see that if she ever crossed me, I'd kill her." (Hilliard Decl., Ex. B at 84; Bushinsky Cert., Ex. B at 84).
>
> - "I laughed, reached in my pocket and took out four bullets and said, 'If you ever turn against me, I have four bullets for you and all three of the kids. And if Erika is here at the time, her ass goes too.'" (Hilliard Decl., Ex. B at 84).
>
> - "I wanted to wipe out a human, Because when you wipe out a human being, that is the must ultimate rush that one could ever have." (Hilliard Decl., Ex. B at 131; Bushinsky Cert., Ex. B at 131).

Based on the foregoing, Case and Local 152 argue that there is good cause for the Court to enter the requested protective order. Further, Case and Local 152 note that Kush's attorney has access to the witness statements as well as the identities of the witnesses and that they do not object to Kush's attorney using the witness statements to depose the witnesses. As such, they contend that Kush's ability to prosecute his case will not be hindered by allowing only counsel to know the identities of the four witnesses at this stage of litigation. Consequently, Case and Local

152 argue that Kush will not be prejudiced by the entry of the proposed protective order. Under these circumstances, they claim that the protective order should be entered and the disclosure of the witnesses' identities should be delayed until absolutely necessary.

### B. Kush

Kush, however, argues that Case and Local 152 have failed to establish good cause warranting the entry of the requested protective order. Kush claims that there is no competent evidence that the Case employees should have any belief let alone a good faith belief that Kush would retaliate against them. Indeed, Kush argues that the witnesses' fear of retaliation is not supported by the record. In this regard, Kush notes that he was not convicted of the terroristic threats charge made against him in 1992. Further, Kush argues that while he was convicted of aggravated manslaughter in 1994, he served over 16 years in prison on that charge and there is no evidence that he has engaged in any violent activity since his release from incarceration. With respect to his book entitled "The Land of the Burnt Face People," while Kush acknowledges it contains facts from his life, he also claims that it is a work of fiction written to make money.

Kush argues that the discovery he seeks, *i.e.,* access to the witness statements and disclosure of the witnesses' identities, is obviously relevant. Moreover, despite Case and Local 152's argument to the contrary, Kush contends that his attorney cannot effectively depose the four employees if Kush, himself, does not know their identities. For example, Kush claims that if he does not know the identities of the witnesses to be deposed his attorney will not know whether Kush would be able to say that the individuals at issue were not in the front room at the time he was there or whether Kush has any reason to believe the individuals harbor any bias toward him. As a result, Kush claims that his attorney will not be in a position to effectively

cross examine these deponents. Consequently, Kush argues that he will be prejudiced by the requested protective order. For these reasons, Kush maintains that Case and Local 152's motion must be denied.

### III. Analysis

Rule 26(c) governs motions seeking the entry of a protective order, like that filed by Case and Local 152 here. Pursuant to Rule 26(c), "[a] party or person from whom discovery is sought may move for a protective order in the court where the action is pending" and [t]he court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense[.]" For example, where good cause is shown, the court may forbid the disclosure or discovery (Rule 26(c)(1)(A)) or forbid inquiry into certain matters or limit the scope of disclosure or discovery to certain matters. Rule 26(c)(1)(D). While Rule 26(c) does not specifically reference privacy rights or other similar rights or interests, the rule implicitly protects such rights and, as such, would be an appropriate vehicle for protecting the witnesses' identities if good cause is shown. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 n.21, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (finding that "[a]lthough the Rule contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule.")

It is well established that the party seeking entry of a protective order bears the burden of demonstrating that good cause exists for the order of protection. *Pansy v. Borough of Stroudsburg*, 22 F.3d 772, 786 (3d Cir. 1994). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984). Further, the injury claimed "must be shown with specificity." *Id.*; *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001) (finding that

6

[i]n delineating the injury to be prevented, *specificity is essential*.") "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," are insufficient to establish good cause. *Cipollone v. Ligget Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987).

"In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process." *Pansy*, 23 F.3d at 787. Under this process, the court "must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm . . . outweighs the need for discovery, disclosure [through discovery] cannot be compelled[.]" *Id*. (internal quotation marks and citation omitted). Nondisclosure in total is an "infrequent result." *Id*. (internal quotation marks and citation omitted). Instead, the issue usually becomes whether disclosure should be made in a specified way. In determining whether good cause exists to limit disclosure, as permitted by Rule 26(c)(1)(D) and other provisions of Rule 26(c)(1), the court again balances the harm to the party or third persons seeking protection against the importance of disclosure to the public or the party seeking same. *Id*. The Court always has discretion to issue a protective order limiting discovery under Rule 26(c) when there is good cause to do so.

Here, the Court finds that good cause does not exist to enter the protective order requested by Case and Local 152. In coming to this conclusion, the Court finds that Case and Local 152 have not established that the four employees' fear of retaliation by Kush, should he learn their identities, is supported by the facts. As Kush points out, he was never convicted of the terroristic threats charge levied against him in 1992. Further, while it is true that Kush was convicted of aggravated manslaughter in January 1994 and served over 16 years in prison on that charge, that conviction occurred over 20 years ago. There is no evidence in the record that Kush

has been convicted let alone charged with any violent crimes since that time.  A single, isolated conviction does not establish a propensity for using violence to get what you want.

Further, the passages from Kush's book do nothing to change the Court's position.  While "The Land of the Burnt Face People" is admittedly based on the events of Kush's life, it is also appears to be a work of fiction.  However, even if the text was not sensationalized and the book represented a non-fiction piece, it still does not support entry of the requested protective order here.  Case and Local 152 rely on the book as evidence of Kush's willingness to use violence to exact revenge and get what he wants.  However, it appears that much of the violence described in the book occurred prior to Kush's conviction and incarceration, which, as noted above, occurred over 20 years ago.  Moreover, there is no evidence that Kush acted upon the multiple threats of violence recounted in the book.  For example, Case and Local 152 rely heavily on passages setting forth Kush's threat to kill his girlfriend, Maria, as well as her children in support of their motion for a protective order.  However, no evidence has been presented to suggest that Kush ever took any action with respect to these threats.  More importantly, there is no evidence that Kush has made any threats specific or veiled to the four employees at issue.

In addition, Kush would be significantly prejudiced if his attorney had to go forward with the employees' depositions without Kush first learning their identities.  Kush, not his attorney, knows who was working at Case when the alleged theft took place.  Kush, not his attorney, would have information concerning why any employee might have a bias against him.  These are important areas that Kush's attorney will want to explore with Kush before deposing the four employees and could severely impact the credibility of these witnesses.  It would be highly prejudicial to deny Kush and his attorney the opportunity to do so.

Under these circumstances, the Court finds that good cause does not exist to support entry of the requested protective order. In reaching this conclusion, the Court does not take the four witnesses' concerns lightly. Indeed, because of those concerns, the Court has already delayed the disclosure of the witnesses' identities, permitting Case to engage in dispositive motion practice concerning whether Kush exhausted his administrative remedies before bringing suit. The District Court, however, has since excused Kush's failure to exhaust his intra-union administrative remedies and has allowed Kush to proceed on all of his claims here. (*See* Letter Order of 3/12/2014; Docket Entry No. 30). At this juncture, the Court finds that after balancing the witnesses' fear of retaliation if their identities are disclosed against the prejudice Kush would suffer based on continuing closure, good cause no longer exists to maintain the secrecy of the witnesses' identities. Simply put, in order for Kush to be able to effectively prosecute this matter, a matter the Court has determined is appropriately proceeding here, he needs to know the identities of the four witnesses now.[4] Further delay cannot be supported on the facts presented here.

### IV.   Conclusion

For the reasons stated above, Case and Local 152's motion for a protective order is denied. An appropriate Order follows.

Dated: July 17, 2014

                                                     s/ Tonianne J. Bongiovanni
                                              **TONIANNE J. BONGIOVANNI**
                                              **United States Magistrate Judge**

---

[4] In order to afford all parties the opportunity to fully review this Opinion, counsel for Kush is directed to refrain from disclosing the witnesses' identities to Kush until **August 4, 2014**.